and may it please the Court. This appeal turns on two issues. The first is whether Rai's judicata applied to bar a client, Brett Healy, whom I referred to by his first name because his brother is a defendant, from bringing a RICO action involving the same people and property as a prior state court action, but a completely different transaction, different nucleus of operative facts, and a different wrong. In those circumstances, it was a mistake for the district court to rule that Rai's judicata barred the RICO claim. The second issue is whether the district court improperly dismissed the RICO action below on statute of limitations grounds, based on its determination that Brett was on inquiry notice of the subject of the RICO action, the invalid issuance of stock in a corporation that holds title to his family ranch, when there was no basis in that a complaint defined any inquiry notice, there were clear factual disputes about what Brett knew and when he knew it. And for that reason, we believe the district court's dismissal at the pleading stage in those circumstances was clear error. The essential facts here that in 1994, the family ranch was owned by a partnership in which Brett and his mother, the defendant appellee Mary Osborne, were partners. That year, Osborne formed a corporation and issued all the stock to herself, a corporation which Brett thought just held her partnership interest. In 1995, unbeknownst to Brett at the time, she had the partnership deliver a deed to the corporation purporting to transfer a title to the ranch from the partnership to the corporation. A few years later, she sold all her stock to her three sons in equal shares, so Brett believed he owned one-third of that stock, one-third of the corporation in which he owned title to the land, and over a decade put more than $2 million of his own funds into ranch operations and improvements. In 2017, he sued and said Justice, let me interrupt your chronology. The decision of the South Dakota Supreme Court – yeah, I've got the right state, sorry – the South Dakota Supreme Court talks about how Brett has constructive notice of a lot of different items. There's a footnote that addresses it and several other places. Doesn't Brett have constructive notice of a lot of the facts of this case and a lot of everything in this case so that res judicata clearly applies? No, Judge Benton. He would – the State court and the State Supreme Court affirming that judgment ruled that Brett had constructive notice of the transfer of the land from the warranty deed back in 1995 was publicly recorded. But this case involves Well, he also signed a mortgage. They said that when he signed a mortgage with a bank, he also had constructive notice of even more items, right? Yes. I think that's what that footnote says. The State – it's settled that the – he cannot challenge the claim, the transfer of the land from the partnership to the corporation back in 1995. This case, the Grieco case, involves a different transaction, the issuance of the shares to Osborne in exchange for no consideration. The Now, he's CEO. Does he have some kind of constructive – apparently constructive notice is a strong doctrine in South Dakota. Does he have constructive knowledge of those transfers of shares? No. He would have had no way of knowing, and there was no public document, no public filing that would have put him on notice that no money was paid for the shares by Osborne when she issued all the shares to herself in forming the corporation. The key point is the land, the defendant's argument, the essence of the defendant's argument which the district court adopted, is that the transfer – somehow the transfer of the property from the partnership to the corporation was that consideration, but that could have been. The land could not have been and was not consideration for those shares for two reasons. First of all, Osborne, Mary Osborne, the mother, did not personally own the land. That's undisputed. It was owned by the partnership. The deed says it's going from the partnership to the corporation, and a partnership – an individual partner can't transfer the partnership assets. That's well-established statutory law in South – and case law in South Dakota. And then the deed itself recited that there was no consideration at all for the transfer of the land. But, counsel, doesn't your complaint acknowledge that HRI has title to the ranch? Yes. The corporation valid – validly holds title to the ranch in the sense – and Brett cannot challenge that. That's the issue that was determined in the first action. And don't you also acknowledge that consideration can be paid for stock after the fact? Yes. The issue is not that the consideration was paid after the shares were issued. The issue is that the land was not consideration – could not have been and was not consideration for the shares, and therefore, the shares were not – were not validly issued. It's not an issue of timing. They could not have been at all because of these two reasons. So the basic transaction, the basic wrong, the nucleus of operative facts in the first action was – is not the same as the second action. And so that first essential element wasn't the same issue in the four-part test applied under South Dakota law for raising the bond. It was not. So it's your position that the stock is worthless today? Yes, exactly. It's not – there's – if Brett wanted to try to sell his interest or even if the family wanted to sell, there would be questions raised about who even has authority to do that. The other key element – another key element in the four-part test raised due to Cotter missing is that Brett did not have a full and fair opportunity in the first case to litigate this issue of whether the stock had been validly issued. Leaving aside what documents he had when, which is a factual dispute not appropriate for resolution in any event on a motion to dismiss, it's true that where the causes of action are different, that doesn't get you out of ways due to Cotter. But under South Dakota law, where the causes of action are different, the South Dakota Supreme Court made clear in the Dakota, Minnesota, and Eastern Railroad case that a plaintiff does not – has not had a fair and full opportunity to litigate an issue unless it was actually determined – actually determined and decided in the first case. Well, what about – what about the American Family Insurance Group case? Do you know that 2010 case from the South Dakota Supreme Court? And they're talking about bars, prosecution and claims that could have been raised even though not actually raised? But I think that the – it doesn't apply where the – where the – where the causes of action are different. And, again, that – the causes of action are different does not get – bar the application of raised due to Cotter. Are you familiar with that case? Because it has some very tough language. When a party to litigation, I'm quoting, fails to develop all the issues, evidence available, is not justified in later trying to raise omitted issues of facts in the second action, based on the same claim, it does end, sir, with based on the same claim. But I think it's American Family Insurance Group. Right. But I think that in the Dakota – Minnesota case, the court made clear that that – the – it doesn't apply where the – where the causes of action are different. In that case, it only applies to issues that actually were determined and litigated in the first action. Turning to the statute of limitations, the issue under RICO, the issue is when do the clocks start to run. It's when the plaintiff should reasonably have discovered his injury, the injury discovery rule. And that turns further on whether the plaintiff should have – should have been able to discover through reasonable diligence the nature of his injury or distance of his injury because he was put on sufficient notice to prompt a reasonable person to inquire further. The district court decided here that Brett had inquiry notice of the problem with capitalization of the corporation, initial issuance of the stock, because of three events. First, the articles of incorporation. This goes to, again, Judge Benton's point about the constructive notice. The articles of incorporation are public. They say that the corporation shall not commence doing business until $5,000 has been received in exchange for the stock. It doesn't give you any indication of whether that was done. And Brett assumed that routinely foreign corporations all day long put in $1,000, $5,000, whatever state law requires. It wasn't done here. But there's no way Brett could have known that merely from the articles of incorporation. Similarly, the district court said, well, Brett purchased the stock in 2000. He should have known something then about whether it was validly issued. But again, there was nothing about the purchase of the stock from his mother that would have put him on notice, actual or constructive, that nothing had been paid for consideration for the stock when it was issued. And finally, Brett became, the district court noted that Brett became president of the company in 2000. But to, but again, there was nothing that he would have learned from being president of the company about whether consideration was paid for the stock five years earlier. He would have had to have the corporate financial records, and he didn't. Those were in the hands of his father, Christ. He was CEO? He was. CEOs have access to financial records. Don't you think that's a constructive notice? Not in this case. He's actually had to bring a separate case in South Dakota State Court, another case that's now pending to get those records. He didn't have access to them. The records were withheld from him, and the amended complaint makes this clear. The records, the tax return and the cash sheet that showed that no money was paid, he didn't have that until he got those late in discovery in the State Court case in August of 2017. It's not like a Fortune 500 company where you snap your fingers in the record. This was a family dispute. To the extent that there were factual issues about what Brett knew or should have known about the issuance of the stock, the district court should not have resolved those on a motion to dismiss. As this Court made clear in the Ritchie Capital case, a statute of limitations defense is only grounds for dismissal when the defense is established by the complaint itself. So for those reasons, we respectfully suggest that the district court was wrong to submit both on the raised-judicata and statute of limitations grounds. I'll save my time for rebuttal. Thank you, Mr. Sandler. May it please the Court, Counsel. I'm here today on behalf of Marian Osborne and Bryce Healy. Ms. Smorgowitz is here on behalf of Defendant Fox. The district court dismissed this case based upon the application of both claim preclusion and the statute of limitations. My portion of the appellee's argument is going to center on the claim preclusion issue and will explain why the district court correctly dismissed the purported RICO case on that basis. The district court correctly applied South Dakota law to conclude that Brett Healy's purported RICO claim was barred by claim preclusion. Both parties and the district court all agree that South Dakota law provides the framework for the claim preclusion analysis. And foremost, the South Dakota Supreme Court has held that claim preclusion prevents a party from relitigating claims that were or should have been brought in a prior action. And that body of law that's developed in South Dakota is consistent with the United States that claim preclusion encompasses the law of merger and bar. The purpose of claim preclusion is to prevent a party from being twice vexed by a party's attempt to relitigate the same matters. And truly, that is the situation here. There was nothing to stop Brett Healy from pursuing a RICO case in State court, and it would have been subjected to the same fate as his other untimely fraud and conspiracy claims that he brought in that forum. Instead, he lost in State court, waited a few years, and then sued his mother and brother again. Now in diving into the claim preclusion analysis, the South Dakota Supreme Court has blended the issue preclusion and claim preclusion factors and applied those factors to both concepts. The district court analyzed it in this fashion as well. Whether you're talking about claim preclusion as simply the idea that the prior judgment on the merits bars the case or if you're dealing with the application of issue preclusion factors, it's a distinction without a difference in this case. Brett Healy's claims are barred under any articulation of the test. And that's because, first of all, the same factual predicate underlies both the State court case and this case. The underlying facts which gave rise to Brett's claim in State court are the same facts that are involved here. It involves a supposedly fraudulent transfer of property into the corporation as part of a conspiracy against him. That was the essence of the South Dakota case. That's the essence of this case. This is simply a repackaged matter brought in in the nature of a RICO claim, but it involves the same nucleus of operative facts dating back to that 1995 conveyance of the ranch real estate to the corporation. Mr. Peterson, if I understand Mr. Sandler's theory, and I may not, but the initial case in State court claimed a fraudulent transfer of the property to the corporation, right? Correct. I think his theory now is that the corporation wasn't properly formed because there was no consideration for the stock. The $5,000 wasn't paid. Is that right? Correct. But I would add that the consideration that's still right in the center of this dispute is that transfer of the real estate into the corporation in 1995. So it's difficult to split that hair, which is what he's trying to do here. But you, of course, want to unsplit it. And I guess that's, is it really the same wrong or not? That would be sought to be corrected. That's what I'm trying to understand. I think it is the same wrong because you're dealing, when you're talking about a cause of action under South Dakota law, you're talking about the underlying facts that make up the claim. And the underlying facts are the same, whether you're talking about the State court case having to do with this partnership land was taken out from under me and given to the court. My shares of stock are now worthless because this transfer of the partnership land was not effective consideration for the shares. You're dealing with the same nucleus. And that's the test. And that's why he doesn't have a way to get around rescue caught on the first element. Let me interrupt you. Yes. South Dakota is not a fact-pleading State. There are eight or ten States that are fact-pleading States, not notice-pleading like the Federal courts are. You're like the Federal courts in notice of claim pleading? That's correct. It's perceived. That's correct. I'm assuming that. The second point I want to make on the claim preclusion issue was that it's clear that the judgment in the State court was a judgment on the merits. Judge Lange followed the lead of the majority of courts which have concluded that a statute of limitations dismissal affects a judgment on the merits or dismissal on the merits. And there's been no persuasive case law provided to the contrary by the appellant here. I think there's every indication that South Dakota would follow the majority of the courts and conclude that a judgment on a statute of limitations grounds suffices as a judgment on the merits. And then finally, the third issue that they raise is that Brett did not have a full and fair opportunity to litigate in the State court. I would raise a couple of things in that regard. First of all, he admits in his pleading that he had the documents that supposedly support this RICO claim here in August of 2017. But he did nothing with them. He did nothing with the courts. He did not file a Rule 56F affidavit and say, Judge, I just got all this information. I need more time before you consider this summary judgment motion. That never happened. I would also point out that in South Dakota, there's a couple of concepts, and one of them was touched on by Judge Benton from American Family v. Robnick. And that's that when a party fails to develop all of the issues and evidence available in the case, the party is not justified in later trying omitted fact or omitted issues. That is precisely — And the sentence ends with, the sentence ends with, based on the same claim, those five words. Correct. And as I've argued earlier, I believe this is the same claim, the same cause of action. The other thing I would point out is that the discovery of — Isn't there a difference between the same nucleus of facts and the cause of action? I think there's just a different articulation of the same test, if I'm understanding what our Supreme Court has said. When they — the Eighth Circuit has used the language nucleus of operative fact, and I think the South Dakota Supreme Court has leaned more toward a cause of action are the underlying facts that make up the claim. I don't know that there's a difference here, because I think you're talking about the same underlying facts here, dating back to the 1995 deed. The other point that I was going to make is that under South Dakota's authority discussing claim preclusion, newly discovered evidence is not an exception to rest judicata. And that's — you could either consider this as Brett failed to fully develop the issues in his previous case, or Brett found newly discovered evidence at some point and now is attempting to start over. Either way, it doesn't get you around rest judicata. This is a case that cries out for — through the application of the doctrine. It's based on — the doctrine is based on a principle that a person should not have to twice face the same cause of action, and that there should be a public — there's a public good in ending litigation. Brett Healy will continue to twist the events of the mid-1990s concerning the Healy Ranch into new legal theories as long as the courts permit it. And in our view, the district court wisely dismissed his RICO case, and that judgment should be affirmed. I'll give the rest of my time to my co-counsel. Very well. Thank you, Mr. Peterson. Good morning, Your Honors. May it please the Court, Counsel. I'm Emily Smorgowitz from Banks McClellan Law Firm, and I represent the appellee Albert Steve Fox, an attorney in this matter. The district court correctly held that plaintiff's RICO claim is barred by the statute of limitations and dismissed it on a 12b6 motion. The parties agree on a few things that set the framework for this Court's analysis. RICO has a four-year statute of limitations, and the Eighth Circuit applies the injury discovery rule to a civil RICO claim. So what that means for this Court is that the limitations period begins when the plaintiff is acquitted. He doesn't need to know the other elements of his claim at that point. He just needs to know about the injury. Now, to stay within the face of the four-year statute of limitations on its face, the appellant has claimed that he did not know of the void stock until August 8th of 2017, when he received 200 pages of documents in the state court action. So that's the subjective intent that that two-part test is talking about. Of course, where the parties diverge in our analysis is that we believe that Brett cannot satisfy the other test, what a reasonable person under due diligence would have known and when they would have discovered his injury. Robertson, let me ask you about that. I think we have to look at the face of the complaint. What on the face of the complaint shows that Brett had this inquiry notice of the alleged fraudulent conduct? So we believe that on the face of the complaint and the judicially noticed facts that the district court took judicial notice of and the appellant didn't object to prove that he had inquiry notice. As Judge Benton indicated in one of his questions, the South Dakota Supreme Court found all kinds of things that Brett Healy had constructive and actual notice of. I'm asking you to tell me what on the face of the complaint you can point to. So that Brett was actively involved in all facets of managing the corporation. He was the president of HRI for 17 years. He had access to all of the corporate records. Those are the facts that we point to in the complaint that talk about whether or not a reasonable person acting in due diligence would have discovered this alleged RICO injury. Like I said, the Supreme Court specifically said, I believe that the appellant's counsel argued to this court that he didn't have access to the right corporate records because it was a closely held family thing. But the South Dakota Supreme Court specifically held otherwise. They held that he had access to the corporate records. Do you know which paragraph? As you know, they number their paragraphs under the uniform system in South Dakota. Do you know which paragraph it's in? Yes. Paragraph 28, Your Honor. Paragraph 28. Okay. The system works here. And they do draw reasonable inferences and, in effect, find facts on appeal, right? Yes. Okay. Proceed. Yes. So in his reply brief and at argument today, appellant's response is, but none of those facts judicially noticed or on the face of the complaint show why he would have known that. But that's our precise point. Under the inquiry notice, reasonable person due diligence standard applied by this court, Brett Healy should have known about his RICO injury by no later than 2000, based on the undisputed record facts before this court. And North Dakota's a two-level system of judiciary. The trial court opinion or order in the South Dakota case, 2019 case, is not on record anywhere, right? I'm sorry, Your Honor. One more time. Yeah, I know. I got it all confused. The, I have in front of me the Supreme Court opinion. Yes. Was the order or judgment appeal from, is it available? It is part of the settled record before this court. Okay. Thank you. Yes. Yes. It was attached to a motion, an affidavit to take judicial notice in the district court level. Thank you. Yes. So just like the Supreme Court found, we believe that Brett has failed to discover the alleged deficiency in the corporate stock issuance within the statutory period that he was required to do for, to do so. And therefore, he was on inquiry notice of the stock that he purchased was allegedly void. A fact that, again, hasn't been held by any court. There's been no declaratory judgment action or any judgment in any court anywhere declaring that stock to be void. It's just Brett's claim in this RICO claim. If I understand your argument, it is that because he had access to the corporate record, he, he wasn't involved in the formation of the corporation, right? That's right. There, the record does say that he was the sole operator of the ranch starting in 1886. So it's not like he wasn't around, but you're right, Your Honor. Okay. So the argument is because he had access to those records, he should have been able to discover that the $5,000 that initially was supposed to initially fund the corporation was never paid. Yes. There's one more fact that, that we would draw the court's attention to. Marion Osborne, his mother, told him in 1994 that she was going to be transferring the partnership into a corporation. So we also believe that that fact also goes into what a reasonable person should have known. Because his mom told him, she didn't say, I'm going to form the corporation and then see what happens with the partnership interest. She said, I'm transferring my part, the partnership, the ranch was in a partnership, and I'm transferring that into the corporation. And that's exactly what she did in 1995. So coupled, coupled with all of the corporate knowledge that he would have had, his mom told him exactly what she was going to do, that that was the consideration. Is his mom telling him that in the Supreme Court of South Dakota's opinion? Yes. And it's also in his amended complaint itself that's pled in this matter. Okay. Thank you. Thank you, Your Honors. Thank you. Thank you. The idea that the, well, first of all, the fact that the Osborne mother told Brett that she was going to put her partnership interest into the corporation is not on the record. But the fact is, that's not what she did. I thought they said it was in the complaint. She just said it was in the complaint. Is it in the complaint or not? She did, yeah, I'm sorry. She did say that. But she did not do that. She never, in fact, the complaint asserts that she did not transfer a partnership interest to the corporation. There's no document in all this massive cases and evidence that ever she did that. What she did do, she never put a partnership interest in the corporation. Had she done that, there would be no issue, because that would have been consideration personally for issuance of shares to her. She put in, she didn't put anything in that she owned into the corporation, ever. No cash, and then land, there's no dispute again. The land was not hers. There's no factual dispute about that, and the amended complaint is clear. There was, the amended complaint also makes clear again that despite the idea that Brett was CEO for 17 years, starting five years after the corporation was formed, he did not affirmatively, did not have access to the 1995 tax return or the cash, records of cash transactions that would have shown that nothing was put in for the corporation, could not be clear about that, and there's nothing, again, publicly, judicially noticeable in an amended complaint that would have given him notice of a problem with issuance of the stock. With respect to the statute of limitations, the res judicata issue, the State court action, of course, just decided the question of the invalidity, that Brett could not transfer because it was too late, statute of limitations. It is true that the South Dakota Supreme Court has never decided whether a judgment based solely on statute of limitations is a judgment on the merits, and this court would be put in a position of predicting what the, how the South Dakota Supreme Court would rule. We would point out, however, that the South Dakota Supreme Court in this, in the decision that's in this record, made clear that it was not deciding the issue of ownership of the land, only the statute of limitations, and we would also note that South Dakota, we believe there's a good chance that South Dakota would adopt the traditional rule that it's true, it's only been preserved by a minority of the State courts at this point, that a judgment on statute of limitations is not a judgment on the merits. And finally, with respect to full and fair opportunity to be heard, the idea that seeing a couple of documents a few weeks before the summary judgment is due should lead someone to turn the case upside down and create a completely new theory and demand that the case be stopped until they can figure it all out. It's not realistic. It's a factual issue that wouldn't be appropriate for determination of the 12B6 motion. And for the reason I said, it's not legally relevant because of the South Dakota Supreme Court decision. Thank you. Roberts. Very well. Counsel, we appreciate your appearance and briefing. The case is now submitted, and we will issue an opinion in due course. And you may be dismissed.